**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KRESS STORES OF PUERTO RICO, INC., ET. AL., Plaintiffs, | |
| | CIVIL No.: 3:20-cv-01464 (WGY) |
| v. | |
| WAL-MART PUERTO RICO, INC., ET. AL., Defendants. | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs, in their representation and in representation of the Class, through their undersigned legal representation, and very respectfully STATE, ALLEGE, and PRAY:

## I. INTRODUCTION

1. The actions that are exercised in this Complaint arise as a result of the unfair competition displayed by Defendants, megastores, and chain pharmacies during the State of Emergency that was declared in the Commonwealth of Puerto Rico as result of the pandemic associated with SARS-CoV-2 and COVID-19.

2. As will be explained in detail below, the herein appearing parties represent a class comprised of local merchants (hereinafter "Class" or "Local Merchants") who, contrary to Defendants, refrained from selling items that are not of first necessity, as required by the Executive Orders issued to those effects by the Honorable Wanda Vázquez Garced (hereinafter jointly called "Executive Order" or "Order"). Defendants sold unscrupulously and in violation of the terms and spirit of the Executive Order, clothing, shoes, televisions, appliances, and countless miscellaneous articles that are not essential items the purchase of which should have awaited the cessation of the effectiveness of the Executive Order. Defendants profited illegally taking advantage of the

situation caused by the pandemic, thus depriving Local Merchants of the opportunity to compete in a legal, fair, fair and equitable manner.

## II. THE PARTIES

A.  Plaintiffs and Class Representatives

3. Kress Stores of Puerto Rico, Inc. is a duly owned domestic corporation organized under the Laws of the Commonwealth of Puerto Rico with physical address at 598 Street A, corner of Matadero, San Juan, Puerto Rico 00920, and mailing at PO Box 11910, San Juan, Puerto Rico 00922. Almacenes Kress de Cayey, Inc. is a duly owned domestic corporation organized under the Laws of the Commonwealth of Puerto Rico with physical address at 598 calle A Esq. Matadero, Suite #2, San Juan, PR 00920, and mailing at PO Box 11910, San Juan, Puerto Rico 00922. Collectively, hereinafter called "Kress." Kress is a family business which is engaged in the retail sale of women and children's clothing throughout the Island, with around thirty-eight (38) stores. Kress closed all of its stores during the effectiveness of the Executive Orders detailed below. As a result of the intentional violations of the Executive Orders and unfair and disloyal business practices carried out by codefendants, Kress suffered a loss of not less than $8,221,000.00.

4.Antonio Bayón and Elba Casiano are natural persons doing business as Tienda Junelba, with physical and mailing address at #10 Unión Street, Lajas, Puerto Rico, 00667. They are a Puerto Rican married couple who own two (2) discount stores in the Municipalities of Lajas and Peñuelas, Puerto Rico, where they sell fabrics, household appliances, furniture, perfumes, nail polishes, cosmetics, underwear, children's clothing and countless other miscellaneous articles who refrained from selling during the effectiveness of the Executive Order that is detailed below. Hereinafter called "Junelba." As a result of the intentional violations of the Executive Orders and

unfair and disloyal business practices carried out by codefendants, Junelba suffered a loss of not less than $50,000.00.

5. J. Pica y Cía., Inc., is a domestic corporation duly organized under the Laws of the Commonwealth of Puerto Rico, whose physical address is 410 Street A, corner of Escorial, Mario Juliá Industrial Development, San Juan, Puerto Rico 00920 and mailing address PO Box 71464, San Juan, Puerto Rico 00936. J. Pica y Cía., Inc., is a family business founded in 1963, which operates sixteen (16) department stores throughout Puerto Rico. Hereinafter called "Capri." Capri closed all of its establishments during the effectiveness of the Executive Orders detailed below. As a result of intentional violations of the Executive Orders and unfair and disloyal business practices carried out by codefendants, Capri suffered a loss of not less than $25,000,000.00.

6. J.M.J. Appliances Corp., is a domestic corporation duly organized under the Laws of the Commonwealth of Puerto Rico, whose physical address is Highway # 2, Corner of Comerío, Bayamón, Puerto Rico 00960 and mailing address PO Box 2848, Bayamón, Puerto Rico 00960-2848. J.M.J. Appliances Corp., is a family business founded in 1971, which operates three (3) furniture and household appliances stores in various municipalities of Puerto Rico. Hereinafter called "J.M.J." J.M.J closed all of its establishments during the effectiveness of the Executive Orders detailed below. As a result of intentional violations of the Executive Orders and unfair and disloyal business practices carried out by codefendants, J.M.M. suffered a loss of not less than $400,000.00.

7. Valija Gitana, Inc., is a domestic corporation duly organized under the Laws of the Commonwealth of Puerto Rico, whose physical address is San Marcos Avenue, El Comandante Industrial Zone, San Juan, Puerto Rico 00910 and mailing address is PO Box 8789, San Juan, Puerto Rico 00910. Valija Gitana, Inc., is a business founded in 1994, which operates twelve (12)

clothing, accessories, and jewelry stores in various municipalities of Puerto Rico. Hereinafter called "Valija Gitana." Valija Gitana closed all of its establishments during the effectiveness of the Executive Orders detailed below. As a result of the intentional violations of the Executive Orders and unfair and disloyal business practices carried out by codefendants, Valija Gitana suffered a loss of not less than $2,000,000.00.

8. Humberto Vidal, Inc., is a domestic corporation duly organized under the Laws of the Commonwealth of Puerto Rico, whose physical address is Medina Building, 10th Floor, #12 Arzuaga Street, San Juan, Puerto Rico 00925 and mailing address is PO Box 21480, San Juan, Puerto Rico 00928-1480. Humberto Vidal, Inc., is a family business founded in 1971, which operates forty-one (41) shoe, stockings, and wallet stores, in twenty-six (26) municipalities throughout Puerto Rico. Hereinafter called "Humberto Vidal." Humberto Vidal closed all of its establishments from March 16, 2020 to May 26, 2020, when it was allowed to reopen ten (10) of its establishments. On June 1, 2020, it was allowed to open the thirty-one (31) remaining establishments. As a result of intentional violations of the Executive Orders and unfair and disloyal trade practices carried out by codefendants, Humberto Vidal suffered a loss of not less than $3,100,000.00.

9. John and Jane Doe are natural persons, owners and/or who operate businesses in Puerto Rico and who suffered damages as a result of the instances of unfair competition and violations of the Executive Order in which the Defendant foreign megastores and chains incurred, as detailed in this Complaint.

10. XYZ Corporation are legal entities, owners and/or that operate businesses in Puerto Rico and that suffered damages as a result of the instances of unfair competition and violations of

the Executive Order incurred by the Defendant foreign megastores and chains, as detailed in this Complaint.

B.  Class

11. The Class that the Local Merchants represent is comprised of local merchants who, contrary to Defendants, refrained from operating and/or selling items that are not of first necessity, as required by the Executive Order issued by the Honorable Wanda Vázquez Garced. They have been adversely affected by the megastores and large pharmacy chains, who unscrupulously and in direct violation of the Order sold clothes, shoes, appliances, televisions, home appliances and countless miscellaneous items that are not of first necessity. These sales should have waited the cessation of the effectiveness of the Executive Order, when the Local Merchants would have had the opportunity to compete legally, loyally, fairly, and equitably.

12. The members of the Class are precisely the group of merchants subject to the protection offered by Regulation No. VII of the Department of Justice. Note that the Preamble of said Regulation No. VII establishes as an objective the protection of honest merchants, faithful believers in business ethics who are affected by the anti-competitive practices of unscrupulous merchants who do not abide by the laws of Puerto Rico.

13. The Local Merchants are legal and natural persons who reside and have businesses throughout Puerto Rico.

14. Due to the large number of the Class, it is impractical to accumulate all of the Local merchants who refrained from selling articles that are not of first necessity during the effectiveness of the Order that will be detailed below.

15. The issues of fact and of law are common and prevail over any issues that affect individual members. The instances of unfair and disloyal competition and violations of the

Executive Order and the acts of illegal monopolization in which the Defendant megastores and foreign chains incurred are common to the entire Class. This violation of the Order was carried out equally and repeatedly by all of the Defendants, acting in a parallel and conscious manner, causing damages of the same nature to the members of the Class represented by the Local Merchants, who suffered economic losses by not being able to commercially compete loyally, fairly, and equitably with the foreign megastores and chains. Similarly, the common relevant evidence is significant and applicable to the entire Class.

16. The Local Merchants' claims are typical of the members of the Class as is evident below and of the causes of action included herein.

17. In addition, the Local Merchants hired attorneys who have investigated this case and who are in a condition to protect the interests of the class fairly and adequately. There is no conflict between the interests of Plaintiffs and other members of the Class, and Plaintiffs are in a position to carry out this lawsuit aggressively and vigorously, as evidenced in this Complaint.

18. The processing of the more than five thousand (5,000) actions that are exercised here by individual members of this large Class would create a clear risk of inconsistent or varied adjudications with respect to the members, it would also be very difficult if not impossible for each member thereof to assert their right individually.

19. This class action is superior to other available means for the fair and efficient administration of justice due to the large number of the Class, and because the cost of the litigation would be greater than the remedy that could be obtained if the actions were processed individually.

20. Although the location of the members of the Class is throughout Puerto Rico, and the acts that constitute violation of the Executive Order arose, also, throughout the Island, it is totally desirable to concentrate all of the Class actions in a single judicial region and in the San Juan

Superior Court of the Court of First Instance, since several of the headquarters of the Defendants are located in the Metropolitan Area and this Judicial Region.

21. Plaintiffs and the Class are represented in this Complaint by the law firm of Saldaña, Carvajal & Vélez-Rivé, PSC, located at number 166 of Constitution Avenue, San Juan, Puerto Rico 00901.

22. In this Complaint and in subsequent motions in this lawsuit we will refer to the representative Plaintiffs, Kress, Junelba, Capri, J.M.J, Valija Gitana, and Humberto Vidal and the Class as the "Local Merchants."

C.  Defendants

## WALMART & SAM'S CLUB

23. Wal-Mart Puerto Rico, Inc., is a corporation registered and authorized to do business in the Commonwealth of Puerto Rico that owns and/or operates eighteen (18) megastores in sixteen (16) Municipalities around Puerto Rico under the name of Walmart or Walmart Supercenter. Wal-Mart Puerto Rico, Inc., also owns and/or operates seven (7) megastores under the name of Sam's Club in seven (7) Municipalities around Puerto Rico. Wal-Mart Puerto Rico, Inc., has its physical address at 16300 Monte Real Plaza, Carolina, Puerto Rico 00987 and mailing address at PMB 725, PO Box 4960, Caguas, Puerto Rico 00726. Wal-Mart Puerto Rico, Inc. is hereinafter referred to as "Walmart."

## COSTCO

24. Costco Wholesale Corporation is a foreign corporation organized and domiciled in the State of Washington of the United States of America, which owns and/or operates four (4) megastores in three (3) Municipalities around Puerto Rico under the name of Costco. The designated offices are located at PO Box 195598, San Juan, Puerto Rico 00919-5598 and PO Box

34331, Seattle, Washington 98124-1331. The Resident Agent of Costco Wholesale Corporation is CT Corporation with address at 361 San Francisco Street, San Juan, Puerto Rico 00901. Costco Wholesale Corporation will hereinafter be referred to as "Costco."

## WALGREENS

25. Walgreen of Puerto Rico, Inc., is a corporation registered and authorized to do business in the Commonwealth of Puerto Rico that owns and/or operates one hundred six (106) pharmacies in almost all of the Municipalities around Puerto Rico under the name of Walgreens. The Resident Agent of Walgreen of Puerto Rico, Inc., is The Prentice-Hall Corporation System, Puerto Rico, Inc., with address at Fast Solutions, LLC, Citi Tower, 252 Ponce de León Avenue, 20th Floor, San Juan, Puerto Rico 00918. Walgreen of Puerto Rico, Inc., will hereinafter be referred to as "Walgreens."

## CVS

26. Puerto Rico CVS Pharmacy, L.L.C., is a limited liability company registered and authorized to do business in the Commonwealth of Puerto Rico that owns and/or operates twenty-two (22) chain pharmacies in fourteen (14) Municipalities around Puerto Rico under the name of CVS Pharmacy. The designated offices are located at 2114 on Highway # 2, Bayamón, Puerto Rico 00961-4849. Puerto Rico CVS Pharmacy will hereinafter be referred to as "CVS."

27. ABC Corporation, whose real names are unknown at present, are legal entities that own and/or operate stores or businesses in Puerto Rico and that engaged in instances of unfair competition and violations of the Executive Order, just like the megastores and chains defendants herein, causing damages to the Local Merchants, as detailed in this Amended Complaint.

## III. RELEVANT FACTS

28. On February 3, 2020, the United States declared a national health emergency due to the spread of the virus known as SARS-CoV-2. Said statement was given three (3) days after the World Health Organization (WHO) declared a global health emergency, due to the confirmation of more than 9,800 cases of contagion and 200 deaths worldwide.

29. On March 11, 2020, the Director of the WHO declared a pandemic related to COVID-19 and manifested that the agency was deeply concerned about the alarming levels of contagion and the severity of outbreaks due to inaction by the nations.

30. Against this backdrop, on March 12, 2020, the Governor of Puerto Rico, Hon. Wanda Vázquez Garced, declared a State of Emergency in the Commonwealth of Puerto Rico as a result of the pandemic associated with the SARS-CoV-2 virus and COVID-19 disease, and its impact on the Island. The clear and unambiguous objective of the declaration of the State of Emergency is to safeguard the health and well-being of Puerto Ricans, avoiding or mitigating the spread of the virus in the population and the collapse of the health system.

31. The aforementioned State of Emergency was declared by means of Executive Order OE-2020-020 of March 12, 2020.

32. On March 15, 2020, the Governor of Puerto Rico promulgated Executive Order OE-2020-023 whereby she imposed a curfew and ordered a total closure of all government activities, as well as the closure of all private businesses that were not essential and that were not expressly exempted in the Executive Order from March 15, 2020, until March 30, 2020.

33. As a direct result of the March 15, 2020 Executive Order, all private non-essential businesses had to close their doors to the public, including all of the locales of the Class, such as

the Local Merchants, including Plaintiffs Kress, Junelba, Capri, J.M.J., Valija Gitana, and Humberto Vidal.

34. Executive Order OE-2020-023 excluded from the order to close businesses that are engaged in retail sales through the drive-thru or delivery model, including prepared foods, medicines or medical equipment, pharmacies, supermarkets, gas stations, banking or financial institutions, elderly care centers, or those that are related to the distribution chain of food, medicines, medical articles or fuel distribution chain. See Executive Order, OE-2020-023, sec. 4th, p. 3.

35. The aforementioned Executive Order established that people going outside within of the period comprised between 5:00 a.m. and 9:00 p.m. could only do so for the acquisition of food, pharmaceutical products, and articles of first necessity, among other activities expressly authorized in Section 6th of OE-2020-023, pp. 3, including those who work in the stores or industries expressly exempted in the Order.

36. Subsequently, on March 30, 2020, Governor Vázquez Garced promulgated Executive Order OE2020-029, whereby the curfew and the closing of stores was extended from March 30, 2020, to April 12, 2020, and it reduced the opening period so that people could carry out the permitted activities from 5:00 a.m. to 7:00 p.m.

37. The permitted activities continued being the same as those of OE2020-023, with the exception that the number of services that were exempt from the Order was increased, provided that hygiene and prevention measures were taken and they were undertaken to address emergency situations, including plumbing services, electricians, exterminators, and other services that are necessary to maintain health and safety. Insofar as this lawsuit is concerned, OE2020-029

maintained the closure of all businesses, with the exception of the supermarkets or those related to food distribution, including animal feed. See OE2020-029, Section 5, Subsection (1), p. 5.

38. During the effectiveness of OE2020-029 all of the locales of the Plaintiffs and the members of the Class remained closed, and/or refrained from selling items other than those of first necessity, in strict observance of what was promulgated by the Government of Puerto Rico.

39. Subsequently, on April 12, 2020, Governor Vázquez Garced promulgated OE2020-033 which extended the 24-hour curfew to seven days a week until May 3, 2020. The authorized activities remained from 5:00 a.m. to 9:00 p.m. and with regard to commercial activities in person, they remained limited to the purchase of food, pharmaceutical products, and articles of first necessity, and in terms of services, to the acquisition of services that were expressly exempted in the Order.

40. OE2020-033 increased the number of permitted activities and services exempted from the closing order, but none of them is related to the face-to-face sale of articles that were not food, pharmaceutical products, or articles of first necessity.

41. On May 1, 2020, the Hon. Wanda Vázquez Garced promulgated Executive Order OE2020-038. In it, the curfew and total closure was extended until May 25, 2020. The aforementioned Executive Order authorized the opening of certain professional services, but it maintained the closure of all in-person commercial activity, with the exception of businesses engaged in the sale of prepared foods, the sale of retail or wholesale food, businesses that are related to food distribution chains, supermarkets and grocery stores, including those businesses whose components include supermarkets or grocery stores. See Section 5th, Subsection (1), Sub-subsection (d) of OE2020-038, p. 9. It is against this regulatory backdrop that all of the codefendants incurred in disloyal business practices. On May 21, 2020, Governor Vázquez Garced

promulgated Executive Order OE2020-041. The aforementioned Executive Order permitted retail sales businesses to open on May 26, 2020 but had to remain closed to the public on Sundays. Moreover, it permitted shopping malls to open on May 26, 2020 for the exclusive purpose of training and preparing employees and tenants to receive general public, and on June 8, 2020 they were able to operate, starting on June 8, 2020. See Executive Order, OE-2020-041, sec. 5th, subsection 15-17, p. 18-20. In the particular case of Humberto Vidal, said business closed all of its establishments from March 16, 2020, until May 26, 2020, when it was allowed to reopen ten (10) of its establishments. On June 2020, it was allowed to open the thirty-one (31) remaining stores.

42. The Order, described above, is clear and consistent in prohibiting the sale of articles that are not, as far as this action is concerned, food, pharmaceutical products, and articles of first necessity. The Executive Order, with its unambiguous language regarding this prohibition, prevented both the Local Merchants and the Defendant megastores and chain pharmacies from selling articles other than those allowed. Hence, the Executive Order is valid, legal, and enforceable since it does not affect a particular group of people in a special way (suspicious classification), since the Order certainly affects all merchants of articles that are not of first necessity equally. Defendants are not a class with particular protection. Furthermore, Defendants had no doubt as to what type of articles could be sold during the effectiveness of the aforementioned Executive Order. Note that as soon as the OE entered into effect, several of the Defendants cordoned off the areas where they offer articles whose sale was prohibited. Notwithstanding this acknowledgment, Defendants sold all kinds of articles, including those whose sale was prohibited. Subsequently, Defendants' impudence reached such a point that those perimeters were removed. See, Affidavits, attached as Exhibits 1, 2, and 3.

43. The Order also clearly established that the citizens and the general public could only leave their homes for the sole purpose of buying food, pharmaceutical products, and products of an essential nature. The codefendant megastores and pharmacy chains knew that by selling products and non-essential items they attracted to their establishments citizens and customers who would acquire those articles in violation of the Executive Orders mentioned above. That is, they became facilitators of thousands of illegal transactions. All with the knowledge that their competitor members of the Class were legally barred from entering into fair, legal and sound competition. Again, as soon as the Executive Order was put into effect, several of the defendant megastores cordoned off the areas where the products whose sale was prohibited by said Order were offered. Notwithstanding this clear evidence that Defendants understood the prohibition contained in the Executive Order, eventually they sold those non-essential products, in open violation of the Order.

44. The Defendant megastore and pharmacy chains, together, sell more than $5,217,070,757.45 annually in Puerto Rico. Defendants offer for sale within their inventory food, medicine and/or articles of first necessity. Defendants unfairly took advantage of their partial exemption to carry out unauthorized sales prohibited by the Executive Order, carrying out commercial activities that were barred by it. These business activities included, but were not limited to, the sale of hundreds of millions of dollars in sales of clothing, shoes, televisions, appliances, household goods, and countless miscellaneous articles that are not articles of first necessity and the purchase of which should have waited for the effectiveness of the Executive Order to cease. That is, these megastores and pharmacy chains used the partial authorization to operate their business due to the sale of food, medicines and/or articles of first necessity, during a State of Emergency of global significance, to hijack the market and make sales and retail

commercial transactions of other products that were not food, medicines, and/or articles of first necessity in contravention of the clear text of the Executive Order. All of that, taking advantage of not having the legal, sound, fair, and equitable competition of the plaintiff Class, including Kress, Junelba, Capri. J.M.J, Valija Gitana, and Humberto Vidal.

45. Through their illegal sales, Defendants created an oligopoly, which, selling articles that they could not sell under the Executive Orders, they co-monopolized the Puerto Rican trade when 95% of the businesses in Puerto Rico were under compulsory closure pursuant to the Executive Orders.

46. Defendants' intentional acts in violation of the Executive Order harmed the competition and the businesses that could not open to the public or sell articles prohibited by the Executive Order. This situation placed in an undue disadvantage the Local Merchants who did abide by the Executive Order since they are engaged in the sale of articles that were not authorized to be sold under the Executive Order, such as retail clothing for women and children, shoes, televisions, and miscellaneous articles that are not of first necessity. The Defendant megastores and chains, under the pretext of selling food, medicines, and/or articles of first necessity, took advantage of the situation to make retail sales of articles excluded from the Executive Order, such as clothing, shoes, electrical appliances, and televisions and hundreds of non-essential products, to the detriment of the businesses not authorized to open and to sell, unfairly and illegally abusing the Local Merchants.

47. The public interest in safeguarding the health of the Puerto Rican people, which is of the utmost hierarchy, cannot be used to encourage unfair competition. The Defendant megastores and chains, under color of the exemption granted in the Executive Orders to sell food and articles of first necessity as part of their commercial activity, incurred these anti-competitive practices and

carried out significant retails sales of clothing, televisions, and other products that are not of first necessity and that should have waited until the effectiveness of the Executive Order ceased. All of this to the detriment of the plaintiff Local Merchants, who respected the mandate of the law.

48. This handful of companies, under color of the authorization contained in the Executive Order, seized the Puerto Rican market, selling without fear of reprisal articles that they had no authorization to sell. These companies gained power and control in the retail market in Puerto Rico, and abusing that power in the market, illegally monopolized it by carrying out prohibited sales. Sales that provided them with an unfair and disloyal competitive advantage. This act had, has, and will have catastrophic effects on Puerto Rican competition and commerce.

49. The net effect of these actions was the illegal hijacking of the market by Defendants, to the detriment of competition and the plaintiff Local Merchants for a period of eleven (11) weeks during which the Puerto Rican consumer had to patronize exclusively those businesses that, like the Defendant megastores and chains, under color of being authorized to sell because within their inventory they offer certain food and other authorized products, made all kinds of excessive sales of retail products, including clothes, shoes, televisions, among others.

50. While the businesses and companies that could not open to the public and sell the articles not included in the Executive Order were closed, absorbing expenses, costs, and losses, Defendants illegally made large sales by selling articles that they were not authorized to sell under the Executive Order. These companies acted in tacit collusion to violate the provisions of the Executive Order and sell the greatest number of prohibited articles.

51. The Director of Public Affairs and of Government of Walmart, Mr. Iván Báez, is a member of the so-called Economic "Task Force" of the Governor of the Commonwealth of Puerto Rico. Said "Task Force" was appointed by the Governor to advise her on the development of

proposals and recommendations for the economic development of Puerto Rico during the COVID-19 crisis. In the specific case of Walmart, Mr. Báez made expressions in the country's press in that the Executive Order only allowed the sale of food and no article that was not of an essential nature. The members of the Class, including Plaintiffs Kress, Junelba, Capri, J.M.J., Valija Gitana, and Humberto Vidal, placed their trust in those statements and relied that Walmart would not sell articles other than food or those of an essential nature during the eleven (11) months period. Walmart's expressions, through Mr. Iván Báez, constitute a unilateral manifestation of will and Walmart is not allowed to go against them. This course of action constitutes an additional instance of unfair competition on the part of Walmart. Therefore, in the particular case of Walmart there is an additional source of responsibility that is autonomous and independent of the Executive Order.

52. On May 9, 2020, during her address in the Centro Unido Informa program, the Governor of the Commonwealth of Puerto Rico, the Honorable Wanda Vázquez Garced, referring to the sale of items prohibited by the Executive Order, emphasized that it was the government's public policy to avoid unfair competition. She also indicated that whoever failed to comply with the Executive Order "would suffer the consequences." Precisely, Plaintiffs resort to this Honorable Forum so that, in accordance with the declared public policy of the State, it have the Defendant megastores and chain pharmacies suffer the consequences of their flagrant breach of the Executive Order.

53. While the Defendant megastores and chain pharmacies were profiting in the millions through their intentional violation of the Executive Order, the Local Merchants, abiding by the law, observed the unfair competition as their businesses plummeted and their employees became impoverished. In addition, during the eleven (11) weeks period, and at present, Defendants' illegal actions have gone unpunished, as the Government has not taken any punitive or corrective action.

54. Thus, on July 22, 2020, after the period of eleven (11) weeks, the Governor of Puerto Rico issued Executive Order No. OE-2020-057. Through it, among other things and as is pertinent hereto, it extended the curfew from 10:00 p.m. to 5:00 a.m., from Monday to Saturday, until July 31; it instructed that on Sunday, July 26, 2020, every citizen must remain in your place of residence or lodging 24 hours a day; and that they may only go out, when the need so warrants under the following circumstances: go to medical appointments, go to hospitals, to buy food, pharmaceuticals products, and products of first necessity, or other activities expressly authorized by OE-2020-057. The aforementioned order also prohibited the sale and dispensing of alcoholic beverages after 7:00 p.m. from Monday through Saturday, and on Sunday, July 26, 2020, it completely prohibited the consumption, sale, and dispensing of alcoholic beverages in the authorized businesses during the entire day.

55. Therefore, OE-2020-057 prohibited, specifically by Sunday, July 26, 2020, the sale of articles that were not of first necessity, groceries, food, or pharmacy products.

56. Notwithstanding the foregoing, codefendant megastore Walmart and the CVS chain pharmacy, in open and reiterated violation of the Executive Order, sold such non-essential products, such as sunglasses, stuffed animals, nail polish, wallet, notebooks, backpacks, folders, padlocks, among others, causing additional damages to the Local Merchants. See, Affidavits, attached as **Exhibits 4 and 5**.

57. If immediate action is not taken, the Local Merchants and the Class expose themselves to continuing to suffer serious harm, including, but not limited to, a substantial drop in their volume of business, the dismissal of employees, and the permanent closure of establishments.

58. Regarding the permanent damage that the Local Merchants and the Class will suffer, the Court must take into consideration that during the relevant period the average Puerto Rican

received financial aid from both the State government  and  the  Federal government. During the effectiveness of the Executive Order, and while Defendants had the market hijacked, the consumer had the resources and the time to acquire articles that could not be sold and that they should have waited for the effectiveness of the Order to end, at which time there would have been fair competition among all of the market participants. These intentional and illegal acts of the Defendant megastores and chain pharmacies have hurt the competition in the long term, further affecting Puerto Rico's fragile economic situation, plagued in itself with a high level of unemployment. Therefore, the tortious acts of Defendants have significantly hurt the competition, they will have long-term resonance in the market, and the latter's recovery will not be viable for several years.

## IV. FIRST CAUSE OF ACTION: UNFAIR AND DISLOYAL COMPETITION UNDER THE CIVIL CODE

59.  Allegations 1 through 58 are adopted by reference.

60. Article 1802 of the Puerto Rico Civil Code of 1930 establishes that whoever by act or omission causes harm to another, through fault or negligence, will be obligated to repair the damage caused.

61. The intentional, tortious, and negligent acts and omissions described above perpetrated by the Defendant megastores and pharmacy chains, consisting in selling products prohibited by the Executive Order during the effectiveness thereof, caused damages and losses to Kress, Junelba, Capri, J.M.J, Valija Gitana, and Humberto Vidal, and the Local Merchants members of the Class, described above.

62. The illegal acts and breach of the Executive Orders by the Defendant companies constitute a flagrant violation of Articles III and IV of Regulation No. VII of Fair Competition of the Department of Justice, Office of Monopolistic Affairs. The damages caused by the Defendant

companies are recoverable by the plaintiff Local Merchants. See, Aguadilla Paint Center, Inc. v. Esso Standard Oil Company (Puerto Rico), 183 D.P.R. 901 (2011).

63. For example, Section 7 of said Article III of Regulation No. VII prohibits any type of conduct that in equity can be declared an unfair method of competition.

64. Section 34 of said Article IV of Regulation No. VII also prohibits acting against the spirit or violating any criminal provision that permeates any law or regulation that regulates business or trade.

65. This Honorable Forum must take note that the Preamble of said Regulation No. VII establishes as objective protecting the honest and faithful merchants believers in business ethics that are affected by the anti-competitive practices of unscrupulous merchants who do not abide by the laws of Puerto Rico.

66. Therefore, the Local Merchants respectfully request that this Honorable Court order Defendants Walmart, Costco, Walgreens, and CVS to pay a sum of not less than $500,000,000.00, plus interest, costs, and attorneys' fees as applicable.

## V. SECOND CAUSE OF ACTION: UNJUST ENRICHMENT

67. Allegations 1 through 66 are adopted by reference.

68. According to the law and jurisprudence, in Puerto Rico a cause of action exists based on unjust enrichment when a party enriches itself through a correlative and connected impoverishment.

69. In this case, the unfair, anti-competitive, conscious practice in violation of the Executive Order to sell prohibited products generated profits for the Defendant megastores and chains of hundreds of millions of dollars, which are estimated at not less than $500,000,000.00. This enrichment was obtained unlawfully since, during the period comprised in the Executive

Order, no private business in Puerto Rico could sell in person the articles that were sold by the Defendant megastores and chains.

70. This caused a correlative impoverishment for the Local Merchants, such as Kress, Junelba, Capri, J.M.J, Valija Gitana, and Humberto Vidal, and other members of the Class, who complied with the Executive Order and abstained from making in-person non-contact sales. The impoverishment of the Local Merchants lies in the loss of sales that should have been made once the Executive Order ceased. The Local Merchants would not have lost those sales if all of the businesses in Puerto Rico, including Defendants, had started selling articles that were not of first necessity, food, and medicines, on equal terms as of June 1, 2020. In view of the unlawful conduct of Defendants and their massive enrichment, at the time when the Local Merchants opened to operate, their customers and consumers had already purchased the products of the relevant market (non-essentials) throughout eleven (11) weeks illegally in the megastores and pharmacy chains.

71. For a period of eleven (11) weeks, the Puerto Rican consumer had to patronize exclusively Defendants who, under color of being authorized to sell because within their inventory they offer certain food products and other authorized products, enriched themselves without legal cause through multi-million dollar retail sales, including clothing, shoes, televisions, among others prohibited by the Executive Order.

72. The displacement of assets in this context is due exclusively to Defendants' intentional, conscious, unfair, and illegal practices in violating the Executive Order. To the extent that the megastores and pharmacy chains sold prohibited articles, the Local Merchants and the Class suffered losses at the expense of Defendants' unfair practices.

73. The illegal acts and the breach of the Executive Orders perpetrated by the Defendant companies constitute a flagrant violation of Articles III and IV of Regulation No. VII on Fair

Competition of the Department of Justice, Office of Monopolistic Affairs and the damages caused by the Defendant companies are recoverable by the plaintiff Local Merchants. See, *Aguadilla Paint Center, Inc. v. Esso Standard Oil Company (Puerto Rico),* 183 D.P.R. 901 (2011).

74. For example, Section 7 of said Article III of Regulation No. VII prohibits any type of conduct that in equity can be declared an unfair method of competition.

75.  Section 34 of said Article IV of Regulation No. VII also prohibits acting against the spirit or violating any criminal provision that permeates any law or regulation that regulates business or trade.

76.  This Honorable Forum should take note that the Preamble of said Regulation No. VII establishes the objective of protecting the honest and faithful merchants believers of business ethics affected by the anti-competitive practices of unscrupulous merchants who do not abide by the laws of Puerto Rico.

77.  Therefore, the Local Merchants and the Class respectfully request that this Honorable Court order the Defendant megastores and chain pharmacies, Walmart, Costco, Walgreens, and CVS to pay a sum of not less than $500,000,000.00, for having enriched themselves without cause in this measure, plus interest, costs, and attorneys' fees as applicable.

## VI.  THIRD CAUSE OF ACTION: EQUITY

78.  Allegations 1 through 77 are adopted by reference.

79. According to the Civil Code and jurisprudence, when there is no law applicable to the case, the court will decide according to equity, which means that natural reason will be taken into account in accordance with the general principles of law, and the accepted and established uses and customs.  See, Article 7 of the Civil Code.

80. Equity, moreover, tends to make the law fair in cases where, in particular circumstances, the application of the general law may result in an injustice.

81. Similarly, it has been recognized that it is the judicial function to interpret and apply the law to concrete cases, fill in the gaps when they exist and, if possible, harmonize the provisions of the law that are or appear to be in conflict.

82. Based on the foregoing, a court cannot refuse to rule on the pretext of silence, obscurity, or insufficiency of the law, or for any other reason, when equity - that is, that which is fair - is the rectification of the law insofar as it can be deficient by its general character.

83. Equity is the justice of a particular case. Equity is understood first and foremost as that way of issuing judicial sentences through a principle that takes into account the unique characteristics of the particular case, so that in view of the latter it is interpreted and applied with justice, which is always written in abstract and general terms.

84. Defendants' actions were clearly illegal since they constituted violations of the clear and unambiguous text of the Executive Order. As a result of their actions, the Local Merchants and the Class have suffered sizeable damages, including, but not limited to, a substantial drop in their volume of business, the dismissal of employees, and, potentially, the permanent closure of their establishments.

85. The illegal actions and violations of the Executive Orders perpetrated by the Defendant companies constitute a flagrant violation of Articles III and IV of Regulation No. VII on Fair Competition of the Department of Justice, Office of Monopolistic Affairs, and the damages caused by the Defendant companies are recoverable by the plaintiff Local Merchants. See, Aguadilla Paint Center, Inc. v. Esso Standard Oil Company (Puerto Rico), 183 D.P.R. 901 (2011).

86. For example, Section 7 of said Article III of Regulation No. VII prohibits any type of conduct that in equity can be declared an unfair method of competition.

87. Section 34 of said Article IV of Regulation No. VII also prohibits acting against the spirit or violating any criminal provision that permeates any law or regulation that regulates business or trade.

88. This Honorable Forum must take note that the Preamble of said Regulation No. VII establishes the objective of protecting honest and faithful merchants believers of business ethics that are affected by anti-competitive practices of unscrupulous merchants who do not abide by the laws of Puerto Rico.

89. Therefore, the Local Merchants and the Class respectfully request that this Honorable Court, in the ample exercise of its discretion and on the basis of its authority, order Defendants Walmart, Costco, Walgreens, and CVS to pay the consequences of their unlawful behavior, in a sum of not less than $500,000,000.00, with any other pronouncement or remedy that is warranted in equity, plus interest, costs, and attorneys' fees as applicable.

## VII.    RESERVATION OF RIGHTS TO PROCESS CAUSES OF ACTION UNDER §§ 1 AND 2 OF THE SHERMAN ACT; CHAPTER XIII MONOPOLY AND RESTRAINT OF TRADE 10 L.P.R.A. §§ 258 AND 260

90.  Allegations 1 through 89 are adopted by reference.

91. The Defendant companies did not refrain from selling in their establishments non-essential products, according to the clear mandate of the Executive Orders. This pattern of illegal sales enriched the Defendant companies and increased their monopolistic power over the market. Due to the illegal actions of the Defendant companies, the plaintiff Local Merchants and the Class have suffered and continue suffering substantial losses. These losses are attributable to the tortious,

illegal, and monopolistic actions on the relevant market and to the illegal sales made unfairly, disloyally, and illegally by the Defendant Companies.

92. The Plaintiff Local Merchants reserve the right to amend the instant Complaint or to file an independent action before the United States District Court for the District of Puerto Rico to activate §§ 1 and 2 of the Sherman Act; Chapter XIII Monopoly and Restraint of Trade 10 L.P.R.A. §§ 258 and 260, if through discovery (or an investigation by the Office of Monopolistic Affairs of the Department of Justice of the Commonwealth of Puerto Rico and/or the Federal Trade Commission) evidence is obtained that upholds the factual grounds to support such causes of action.

## VIII.    DEMAND FOR TRIAL BY JURY

93. Plaintiffs demand that the instant action be tried before a jury.

## IX. PRAYER

**WHEREFORE**, the Local Merchants, Kress, Junelba, Capri, J.M.J, Valija Gitana, and Humberto Vidal by themselves and in representation of the Class, respectfully pray that this Honorable Court GRANTS the instant Amended Class Action Complaint and the causes of action contained herein. It is further prayed, pursuant to Rule 23(c) of Civil Procedure, that the Honorable Court determine at an early practicable time to certify the action as a class action. Consequently, it is prayed that it enter judgment:

A. Certifying the Class comprised by Local Merchants that, contrary to Defendants, refrained from selling articles that were not of first necessity, as required by the Executive Order issued to those ends by the Honorable Wanda Vázquez Garced, for the period of effectiveness of the Executive Order.

B.  Sentencing Defendants to pay a sum of not less than $500,000,000.00, for damages in favor of the Local Merchants Kress, Junelba, Capri, J.M.J, Valija Gitana, and Humberto Vidal and the Class represented by them, as alleged in the First Cause of Action.

C.  Sentencing Defendants to pay a sum of not less than $500,000,000.00, by reason of the unjust enrichment and correlative impoverishment of the Local Merchants Kress, Junelba, Capri, J.M.J., Valija Gitana, and Humberto Vidal and the Class represented by them, as alleged in the Second Cause of Action.

D.  Sentencing Defendants to pay a sum of not less than $500,000,000.00, in a punitive, restorative and equity concept, in favor of Local Merchants Kress, Junelba, Capri, J.M.J., Valija Gitana, and Humberto Vidal and the Class represented by them, as alleged in the Third Cause of Action.

E.  Sentence Defendants to pay the costs, expenses, and attorneys' fees due to temerity, and ordering any other remedy that applies in law or equity, according to the Court's sound legal discretion.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys on record.

In San Juan, Puerto Rico, this 13th day of May, 2021.

**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, PSC**
166 Avenida De La Constitución
San Juan, Puerto Rico 00901
Tel.: (787) 289-9250
Fax:  (787) 289-9253

| | |
|---|---|
| *s/Luis N. Saldaña* | *s/Fernando Sabater-Clavell* |
| LUIS N. SALDAÑA | FERNANDO SABATER-CLAVELL |
| Bar Number:  208001 | Bar Number: 228003 |
| lsaldana@scvrlaw.com | |

fsabater@scvrlaw.com

*s/Ian P. Carvajal*                 *s/ Ángel E. Rotger Sabat*
IAN P. CARVAJAL                 ANGEL E. ROTGER SABAT
Bar Number: 212003              USDC-PR No.: 208601
icarvajal@scvrlaw.com           arotger@scvrlaw.com