UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| KRESS STORES OF PUERTO RICO, INC., ANTONIO BAYÓN and ELBA CASIANO d/b/a TIENDA JUNELBA, J. PICA Y CÍA, INC. d/b/a CAPRI, J.M.J. APPLIANCES CORP., VALIJA GITANA, INC., HUMBERTO VIDAL, INC., and ALMACENES KRESS DE CAYEY, INC.<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART PUERTO RICO, INC., COSTCO WHOLESALE CORPORATION, WALGREEN OF PUERTO RICO, INC., PUERTO RICO CVS PHARMACY, LLC,<br><br>Defendants. | CIVIL ACTION<br>NO. 20-01464-WGY |

YOUNG, D.J.[1]                                             July 9, 2021

## MEMORANDUM OF DECISION

## I.    INTRODUCTION

The plaintiff Kress Stores of Puerto Rico, Inc. and other
Puerto Rican merchants (collectively, the "Local Merchants")
filed this action in the Commonwealth of Puerto Rico Court of
First Instance, alleging unfair competition against the
defendants Wal-Mart Puerto Rico, Inc., Costco Wholesale
Corporation, Walgreen of Puerto Rico, Inc., and Puerto Rico CVS
Pharmacy, LLC (collectively, the "Megastores").  Following the

---

[1] Of the District of Massachusetts, sitting by designation.

Megastores' removal to this Court, the Local Merchants moved to remand, arguing that the "Home State Exception" and the "Local Controversy Exception" to the Class Action Fairness Act of 2005, 28 U.S.C. § 1453 ("CAFA"), strip this Court of subject-matter jurisdiction. For their part, the Megastores moved to dismiss for failure to state a claim upon which relief can be granted, contending that the Local Merchants did not have a cognizable cause of action under Article 1802 of the Puerto Rico Civil Code ("Article 1802"), and that even if they did have such a cause of action, the Local Merchants failed to allege facts sufficient to support it.

On April 22, 2021, this Court held oral argument on both motions. When arguments concluded, this Court denied the Local Merchants' motion to remand and took the Megastores' motion to dismiss under advisement. On May 3, 2021, this Court denied the Megastores' motion to dismiss as to count I and allowed the motion as to counts II and III. This memorandum of decision explains the Court's reasoning.

## II. FACTS ALLEGED

The Local Merchants, all of whom are citizens of Puerto Rico, are a putative class of stores and store owners who sell clothes, cosmetics, household appliances, and other miscellaneous articles. Notice of Removal, Ex. 3, Am. Class Action Compl. ("Compl.") ¶¶ 3-10, ECF No. 1-3. The Megastores

are major businesses which own retail pharmacy and supermarkets throughout the Unites States, including Puerto Rico. Id. ¶¶ 23-27.

In March 2020, the World Health Organization declared a global health emergency in response to COVID-19. Id. ¶ 28. On March 12, 2020, the Governor of Puerto Rico declared a state of emergency and over the course of several months issued a series of executive orders related to COVID-19 (collectively, the "Executive Orders"). Id. ¶¶ 30-41. The Executive Orders were in effect from March 15, 2020 until May 25, 2020. Id. ¶ 41.

In pertinent part, the Executive Orders required "all private non-essential business," including the Local Merchants, to "close their doors to the public," id. ¶ 33, but exempted from closure all businesses that were "engaged in retail sales through the drive-thru or delivery model, including prepared foods, medicines or medical equipment, pharmacies, supermarkets, gas stations, banking or financial institutions, elderly care centers, [and] those that [were] related to the distribution chain of food, medicines, medical articles or fuel distribution chain," id. ¶ 34. Meanwhile, according to the Local Merchants, the Megastores violated the Executive Orders by selling all kinds of products, both essential and non-essential, with the knowledge that the Local Merchants had closed in compliance with the Executive Orders. Id. ¶ 43. Specifically, the Megastores

"unfairly took advantage of their partial exemption" for "food, medicine, and/or articles of first necessity" by "carry[ing] out unauthorized sales prohibited by the Executive Order[s]," including hundreds of millions of dollars in sales of "clothing, shoes, televisions, appliances, household goods, and countless miscellaneous articles that [were] not articles of first necessity . . . ." Id. ¶ 44. By selling these prohibited items, the Megastores allegedly engaged in unfair competition vis-à-vis the Local Merchants. Id. ¶ 46.

## III. THE MOTION TO REMAND

Costco removed this action from the Commonwealth of Puerto Rico Court of First Instance, arguing that this Court has subject-matter jurisdiction under CAFA. Notice of Removal ¶¶ 5-14. The Local Merchants moved to remand, asserting that CAFA's Home State Exception or Local Controversy Exception strips this Court of subject-matter jurisdiction. Mot. Remand 4-12, ECF No. 107. The central legal question, therefore, was whether either exception applied. This Court answered that question in the negative.

Under CAFA, a federal district court has subject-matter jurisdiction over class actions based on state law when (1) the amount in controversy exceeds $5,000,000, (2) there is "minimal" diversity (i.e., "any member of a class of plaintiffs is a citizen of a State different from any defendant"), and (3) the

action involves at least 100 class members. 28 U.S.C.

§§ 1332(d)(2), (d)(5)(B). "The burden of showing federal jurisdiction is on the defendant removing under CAFA." Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). Here, there is no dispute that these requirements are satisfied, as the amount in controversy is $500,000,000, Compl. ¶ 66, the Local Merchants are citizens of Puerto Rico and Costco is a citizen of Washington, id. ¶¶ 3-10, 24, and the putative class has 5,000 members, id. ¶ 18. Accordingly, this Court has subject-matter jurisdiction under CAFA unless an exception applies.

CAFA contains two exceptions, the so-called Home State Exception and the Local Controversy Exception. See 28 U.S.C. §§ 1332(d)(4)(A), (B). "Plaintiffs seeking remand under a statutory exception to CAFA bear the burden of proof by a preponderance of the evidence." In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009).

## A. Home State Exception

Under the Home State Exception, a court "shall decline to exercise jurisdiction" when (1) "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" are "citizens of the State in which the action was originally filed," and (2) "the primary defendants[] are citizens of the

State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The phrase "primary defendants" is not defined by CAFA, and there is a split of authority as to its meaning. Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 504 (3d Cir. 2013); see Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 515-16 (E.D. Pa. 2007); Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC, No. 10-cv-00510-GMN-LRL, 2011 WL 941079, at *6 (D. Nev. Mar. 16, 2011); Bennet v. Bd. of Comm'rs for East Jefferson Levee Dist., Civil Action Nos. 07-3130, 07-3131, 2007 WL 2571942, at *6 (E.D. La. Aug. 31, 2007).

"Some courts have embraced the definition of primary to mean direct and construed the words 'primary defendants' to capture those defendants who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification." Vodenichar, 733 F.3d at 504. This interpretation is supported by the statements of CAFA's sponsors, who described the primary defendants as "the real targets of the lawsuit." Id. at 504-05 (quotations omitted). Other courts have relied on the complaint to identify which defendants are "expected to sustain the greatest loss if liability were found . . . ." Id. at 505. Reviewing these approaches, the Ninth Circuit held that

> a court analyzing whether a defendant is a "primary
> defendant" for purposes of CAFA's home state exception
> should first assume that all defendants will be found

liable. The court should then consider whether the
defendant is sued directly or alleged to be directly
responsible for the harm to the proposed class or
classes, as opposed to being vicariously or
secondarily liable. The court should also consider
the defendant's potential exposure to the class
relative to the exposure of other defendants. Courts
should not treat these considerations as exhaustive or
apply them mechanistically. The inquiry is whether a
defendant is a "'principal,' 'fundamental,' or
'direct'" defendant. Finally, we agree that "by using
the word 'the' before the words 'primary defendants'
rather than the word 'a,' CAFA requires remand under
the home state exception only if all primary
defendants are citizens of" the alleged home state.

Singh v. Am. Honda Fin. Corp., 925 F.3d 1053, 1068 (9th Cir.

2019) (brackets and citation omitted).

In addition to the plain meaning of the statute, courts

have considered CAFA's legislative history. See Hunter v. City

of Montgomery, 859 F.3d 1329, 1336 (11th Cir. 2017). In that

regard, the Senate Judiciary Committee's report on CAFA

provides:

The Committee intends that "primary defendants" be
interpreted to reach those defendants who are the real
"targets" of the lawsuit -- i.e., the defendants that
would be expected to incur most of the loss if
liability is found. Thus, the term "primary
defendants" should include any person who has
substantial exposure to significant portions of the
proposed class in the action, particularly any
defendant that is allegedly liable to the vast
majority of the members of the proposed classes (as
opposed to simply a few individual class members).

Id. (quoting S. Rep. No. 109-14, at 43 (2005) (brackets

omitted)).

Here, Costco is not a citizen of Puerto Rico. Compl. ¶ 24. If Costco is a primary defendant, then not all primary defendants are citizens of Puerto Rico, and the Home State Exception does not apply. See Singh, 925 F.3d at 1068; Hunter, 859 F.3d at 1335. Under the interpretation of "primary" as "direct," see Vodenichar, 733 F.3d at 504, Costco is clearly a primary defendant because the complaint concerns the direct and personal conduct of Costco, as opposed to Costco's vicarious or secondary liability, see Compl. ¶ 58. With regards to the comparable-liability-exposure approach, this Court ruled that the Local Merchants failed to show that Costco is not a primary defendant. The Local Merchants characterized co-defendants Wal-Mart Puerto Rico, Inc. ("Walmart") and Walgreen of Puerto Rico, Inc. ("Walgreen") as primary defendants because they operate 25 stores and 106 stores, respectively, but characterize CVS as a non-primary defendant because CVS operates "only" 22 stores. Mot. Remand 5. The Court does not find this reasoning persuasive for two reasons. First, the Local Merchants failed to cite any caselaw that supports interpretation of primacy by counting the number of stores owned by each Megastore. As explained above, the caselaw determines primacy, in pertinent part, based on the "number of class members purportedly impacted by the defendant's alleged actions" and the "defendants who would sustain the greatest loss if found liable . . . ." See

Vodenichar, 744 F.3d at 505. Second, even were the number of stores an appropriate benchmark for determining liability, the numbers provided by the Local Merchants are unpersuasive. The Local Merchants cite no legal authority for drawing such a line between 22 stores and 25 stores, and there is no principled factual distinction to be found in that small difference. Therefore, this Court ruled that Costco is a primary defendant, and since it is not a citizen of Puerto Rico, the Home State Exception does not apply.

### B. Local Controversy Exception

The second exception to CAFA is the Local Controversy Exception. See 28 U.S.C. § 1332(d)(4)(A). For this exception to apply, the party seeking its application must show that:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

Vodenichar, 733 F.3d at 506-07. With respect to the third element, "Neither CAFA nor the First Circuit provides any direct guidance for determining . . . when a defendant's conduct is a

'significant' basis for a claim." Manson v. GMAC Mortg., LLC, 602 F. Supp. 2d 289, 295 (D. Mass. 2009) (Stearns, J.). "Courts that have addressed the issue have required that the conduct of an allegedly significant defendant must be significant in relation to the conduct alleged against other defendants in the complaint, and that the relief sought against that defendant is a significant portion of the entire relief sought by the class." Id. (quotations omitted). As the Third Circuit explained:

> In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants. Indeed, all the claims asserted by the Plaintiffs reflect the alleged conduct of all the Defendants. If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied. Whether this condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants.

Kaufman v. Allstate N.J. Ins. Co., 561 F.3d. 144, 156 (3d Cir. 2009) (emphasis added).

Here, the third element has not been satisfied because the Local Merchants failed to meet their burden of showing that the conduct of a local defendant is a "significant basis" for the claim asserted. See 28 U.S.C. § 1332(d)(4)(A). Wal-Mart Puerto Rico, Inc. is a local defendant because it is incorporated in Puerto Rico. The Local Merchants allege that Iván Báez ("Báez"), Walmart's Director of Governmental and Public Affairs

and a member of the Economic Task Force created by the Governor of Puerto Rico to address the COVID-19 pandemic, "made expressions in the country's press in that the Executive Order only allowed the sale of food and no article that was not of an essential nature." Compl. ¶ 51. The Local Merchants attempted to use that statement to support their assertion that Walmart's conduct is "broader than the conduct of the rest of the co-defendants." Mot. Remand 6. Specifically, the Local Merchants contended that they "placed their trust" in Báez's statements and presumed on that basis that Walmart would not sell non-essential articles. Compl. ¶ 51. The Local Merchant's argument is unpersuasive for three reasons.

First, Báez did not promise that Walmart would not sell non-essential articles. Báez allegedly stated that "the Executive Order only allowed the sale of food and no article that was not of an essential nature." Id. The Local Merchants, of their own volition, made a logical leap in characterizing that statement as a promise binding Walmart not to sell certain items, or as the Local Merchants describe it, a "unilateral manifestation of will" that "Walmart is not allowed to go against." Id. This logical leap has no basis in law or fact.

Second, the Local Merchants fail to explain why Baez's statements, even if promissory, would make Walmart's conduct a "significant basis" relative to the conduct of the other

Megastores.  Indeed, all four Megastore are alleged to have sold prohibited articles.  Id. ¶ 58.

Finally, the Local Merchants closed their stores because they believed that they had to do so pursuant to the Executive Orders, id. ¶ 2, and not because they had any reasonable basis to rely on Walmart not to sell non-essential articles.  Because the Local Merchants did not demonstrate that Walmart's conduct forms a significant basis for the claims asserted, the Local Controversy Exception does not apply, and this Court therefore DENIED the Local Merchants' motion to remand.[2]

## IV.  THE MOTION TO DISMISS

The Local Merchants brought three counts against the Megastores: unfair competition (count I), unjust enrichment (count II), and equity (count III).  Compl. ¶¶ 59-66, 67-77, 78-89.  The Megastores moved to dismiss all counts.  See generally Mot. Dismiss Am. Compl. ("Mot. Dismiss"), ECF No. 45.  For the reasons explained below, this Court DENIED the Megastores' motion to dismiss as to count I and ALLOWED the motion as to counts II and III.

---

[2] The Local Merchants did not contend that the allegedly wrongful conduct of any other "local defendant" constituted the requisite "significant basis."  See Mot. Remand 6-7 (describing Walmart as the "main non-diverse defendant" and arguing that "the inclusion of Wal-Mart as a co-defendant triggers the Local Controversy Exception, making remand proper. . . . Wal-Mart's conduct, through [Báez], forms a significant basis of the claims asserted").

## A. Pleading Standing

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court will "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but it will disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations and quotations omitted).

## B. Count I: Unfair Competition

In support of their motion to dismiss count I, the Megastores made three arguments: (1) the Executive Orders do not create a private right of action for their violation, Mot. Dismiss 2; (2) no private right of action for unfair competition exists under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"), Mot. Dismiss 9; and (3) even if there is a private right of action for unfair competition under Article 1802, the Local Merchants failed to allege facts sufficient to state a plausible claim, Mot. Dismiss 9-10.

## 1. The Executive Orders Do Not Create a Private Right of Action.

The Megastores moved to dismiss count I, arguing that the Executive Orders do not create a private right of action for violation of the Executive Orders. Mot. Dismiss 2. Section 11 of the relevant Executive Order provides, "This Executive Order is not intended to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative, against the Government of Puerto Rico or its agencies, officials, employees, or <u>any other person</u>." Mot. Dismiss, Ex. 2, Executive Order of the Governor of Puerto Rico, Hon. Wanda Vázquez-Garced, to Implement the Necessary Closure of Governmental and Private Sector Operations in Order to Combat the Effects of Coronavirus (Covid-19) and to Control the Risk of Infection on Our Island (the "Executive Order") 4–5, ECF No. 45-2 (emphasis added). According to the Megastores, this language bars the Local Merchants from bringing an action for violation of the Executive Orders. Mot. Dismiss 12. In response, the Local Merchants essentially urge this Court to read "any other person" as "any other person of the Government," thereby allowing the Local Merchants to bring an action against the Megastores, as non-governmental entities, for violation of the Executive Orders. Opp'n Defs.' Joint Mot. Dismiss ("Pls.' Opp'n) 2, ECF No. 59.

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (brackets, citation, and quotations omitted). "Under the omitted-case canon of statutory interpretation, nothing is to be added to what the text states or reasonably implies . . . ." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012). Additionally, under the ordinary-meaning canon, words are to be understood in their ordinary, everyday meanings, unless the context indicates that they bear a technical sense. Id. at 70. When a statute has not supplied a definition, courts "look first to the word's ordinary meaning." Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 407 (2011). In doing so, courts "interpret the words in their context and with a view to their place in the overall statutory scheme." Tyler v. Cain, 533 U.S. 656, 662 (2001) (quotations omitted), see United States v. Williams, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated.").

Accordingly, this Court ruled that the Local Merchants' reading of the Executive Order is incompatible with the plain

text of the Executive Order.  First, the Local Merchants read "any other person" to mean "any other person <u>of the Government</u>," an interpretation which requires the addition of three limiting words to an unambiguous text.

Second, the word "other" is a meaningful distinction between Governmental persons and any <u>other</u> persons. Specifically, section 11 of the Executive Order provides that it does not create enforceable rights "against the Government of Puerto Rico or its agencies, officials, employees, or any <u>other</u> person."  Executive Order 4-5 (emphasis added).  The word "other" in this context suggests that it refers to any person <u>other</u> than Governmental persons.

Third, and relatedly, the ordinary meaning of "any other person" is any person other than the enumerated persons.  There is nothing in the Executive Order which indicates a need to stray from the ordinary meaning of its text.

Finally, looking at the words "any other person" in their context and with a view to their place in the Executive Order, this Court reached the same conclusion.  Specifically, section 11 provides that "[t]his Executive Order is not intended to create <u>any</u> rights, substantive or procedural, enforceable at law or equity, by <u>any person</u> or entity, in <u>any matter</u>, civil, criminal, or administrative . . . ."  <u>Id.</u> 4.  The repetition of

the word "any" supports the conclusion that the Executive Order does not create enforceable rights whatsoever.

### 2. Claims for Unfair Competition Are Cognizable Under Article 1802.

Both the Local Merchants and the Megastores agreed that section 259(a) of the Puerto Rico Antitrust Act ("Act 77") does not create a private right of action. Mot. Dismiss 11-12; Pls.' Opp'n 2. As matter of law, that is correct. Section 259(a) of Act 77 provides, "Unfair methods of competition, and unfair or deceptive acts or practices in trade or commerce are hereby declared unlawful." P.R. Laws Ann. tit. 10, § 259(a). Section 268(a) of Act 77 provides, however, that "[a]ny person who shall be injured in his business or property . . . by reason of acts . . . forbidden or declared to be unlawful by the provisions of this chapter, except § 259(a) . . . may sue therefor." Id. § 268(a) (emphasis added).

The Local Merchants and the Megastores disagreed, however, about whether and how a violation of Act 77 might form the basis for a claim under Article 1802. The Local Merchants argued that "although Act 77 does not create a private cause of action, its violation triggers the right to bring an action under the Civil Code of Puerto Rico, including but not limited to Article 1802." Pls.' Opp'n 2. The Local Merchants supported this argument by citing the Puerto Rico Supreme Court's decision in Aguadilla

Paint Center, Inc. v. Esso, which held that although private
parties cannot bring a claim pursuant to Act 77, nothing in that
Act prevents recovery under Article 1802.  183 P.R. Dec. 901,
933-34 (2011).  The Megastores, which also relied on Aguadilla,
contended that "the mere violation of Act 77 is not sufficient
to give rise to a claim under Article 1802.  Instead, it would
be necessary to allege additional, independent negligent acts
and other harms, even if arising out of the same occurrence, but
distinct from the alleged violation of Act 77, itself."  Mot.
Dismiss 11.

In Aguadilla, the Puerto Rico Supreme Court held that
although Act 77 does not create a private right of action, "this
does not have the intention of affecting the right to bring an
ordinary action in tort, if such work [sic] warranted under the
Civil Code or other legal principles."  183 P.R. Dec. at 933-34.
With respect to "simple or ordinary damages under Section
1802 . . . we do not find anything in [Act 77] that would
prevent such; to the contrary."  Id. at 933.  "The Legislature
did not intend for a cause of action such as that in the instant
case not to obtain a simple or ordinary remedy in an action in
tort under Section 1802 of the Civil Code, supra.  Quite the
contrary."  Id. at 934.

The Puerto Rico Court of Appeals later applied this holding
when it ruled that the inability of a private party to bring an

action pursuant to Act 77 "does not mean that a person aggrieved by such conduct cannot obtain an indemnification remedy. [Act 77] does not prevent a party from being compensated for the damages that the anti-legal conduct described therein prohibits under Article 1802 of the Puerto Rico Civil Code." Aguadilla Paint Center, Inc. v. Esso, DAC2005-0343, 2014 WL 3841044, at *3 (P.R. App. Ct. 2014). Accordingly, claims for unfair competition are cognizable under Article 1802.

The Megastores also relied on the First Circuit's decision in Díaz-Ramos v. Hyundai Motor Co. See Reply Supp. Mot. Dismiss 3 (citing 501 F.3d 12, 15 (1st Cir. 2007)). First, the Megastores contended that in Díaz-Ramos the First Circuit reached the "inescapable conclusion that [Act 77] does not provide a private right of action under section 259." Id. (quoting Díaz-Ramos, 501 F.3d at 15). As explained above, however, the Local Merchants do not disagree with that conclusion. Pls.' Opp'n 2. Second, to the extent that the Megastores urged this Court to read Díaz-Ramos as interpreting Article 1802, the decision simply does not support such a reading. The appellant in Díaz-Ramos did not appeal the dismissal of his Article 1802 claim, 501 F.3d at 14 ("On appeal, Diaz presses only his claim pursuant to section 259 of [Act 77]."), which the District Court had dismissed for failure to plead "injuries actually suffered," Ramos v. Hyundai Motor Co.,

431 F. Supp. 2d 209, 213 (D.P.R. 2006). Rather, the question in Díaz-Ramos was whether the Consumer Class Action Act, P.R. Laws Ann. tit. 32, §§ 3341-3344, "provides the private right of action that [Act 77] explicitly denies," 501 F.3d at 15. In answering that question in the negative, the First Circuit held that "nothing in the [Consumer Class Action Act] -- a procedural class action statute -- provides any indication that the Puerto Rico legislature intended to create a substantive right of action for class action suits pursuant to section 259(a)." Id. at 17. Díaz-Ramos said nothing at all about bringing a private cause of action under Article 1802 for unfair competition. This Court, applying the controlling Aguadilla decision of the Puerto Rico Supreme Court, therefore held that the Local Merchants' claims for unfair competition are cognizable under Article 1802.

### 3. The Local Merchants State a Plausible Claim Under Article 1802.

Having held that claims for unfair competition are cognizable under Article 1802, this Court must evaluate whether count I states a plausible claim for relief under that statute. See Pressure Vessels of P.R. v. Empire Gas de P.R., 137 P.R. Dec. 497 (1994) (holding that plaintiffs who brought a claim under Article 1802 for unfair competition may not "prevail in their antitrust suit solely by proving the existence of

contracts described in the complaint.  They must bring evidence to establish the elements constituting the cause of action").

The Megastores contended that the Local Merchants fail to state a claim under Article 1802.  Mot. Dismiss 12. Specifically, the Megastores argued that

> [t]he mere violation of Act 77 is not sufficient to give rise to a claim under Article 1802.  Instead, it would be necessary to allege additional, <u>independent negligent acts and other harms</u>, even if arising out of the same occurrence, but <u>distinct from the alleged violation of Act 77</u>, itself.  But Plaintiffs do not identify any other independent negligent acts by the Defendants in their Amended Complaint that would give rise to a cause of action under Article 1802.

Mot. Dismiss 11 (emphasis added).  Drawing, as it must, every reasonable inference in the Local Merchants' favor, <u>see</u> <u>Berezin</u>, 234 F.3d at 70, this Court concluded that count I states a plausible claim for relief.

"Under Puerto Rico law, tort liability is governed by [Article] 1802."  <u>See</u> <u>Benito-Hernando</u> v. <u>Gavilanes</u>, 849 F. Supp. 136, 140 (D.P.R. 1994) (Fuste, J.).  Article 1802 provides, "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31, § 5141.  To state a claim under Article 1802, a plaintiff must allege "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between the act or omission and the damages."

_Santiago_ v. _Reliable Fin. Servs., Inc._, 526 F. Supp. 2d 226, 234 (D.P.R. 2007) (Gelpi, J.).

This Court ruled that the Local Merchants stated a plausible claim under Article 1802. First, the negligent act alleged in the instant case is, just as the Puerto Rico Supreme Court recognized in _Aguadilla_, the "prohibited act under an antitrust statute." _See_ 183 P.R. Dec. at 945. The _Aguadilla_ court explained that this recognition is consistent with its previous decision in _Pressure Vessels of Puerto Rico_ v. _Empire Gas de Puerto Rico_, in which the court permitted the plaintiffs to bring a claim under Article 1802 for violation of Act 77. _See Aguadilla_, 183 P.R. Dec. at 945 (citing _Pressure Vessels_, 137 P.R. Dec. at 497). Specifically, the Local Merchants pled that the Megastores competed unfairly as proscribed by section 259(a) of Act 77. Compl. ¶ 62.

Second, the Local Merchants alleged that they suffered damages amounting to at least $500,000,000. _Id._ ¶ 66. The Megastores do not dispute the sufficiency of this allegation.

Finally, the Local Merchants pled that the Megastores' violations of the Executive Orders caused the Local Merchants' damages. Specifically, the Local Merchants alleged that the Megastores "gained power and control in the retail market in Puerto Rico," "illegally monopolized it by carrying out prohibited sales," and that these prohibited sales had and will

have "catastrophic effects on Puerto Rican competition and commerce." Id. ¶ 48. The Local Merchants further alleged that during the Megastores' "illegal hijacking of the market" for eleven weeks, consumers "had to patronize exclusively those businesses that, like the Defendant megastores and chains, under color of being authorized to sell because within their inventory they offer certain food and other authorized products, made all kinds of excessive sales of retail products, including clothes, shoes, televisions, among others." Id. ¶ 49. The Local Merchants also pled that the "intentional, tortious, and negligent acts and omissions described above perpetrated by the Defendant megastores and pharmacy chains, consisting in selling products prohibited by the Executive Order during the effectiveness thereof, caused damages and losses" to the Local Merchants. Id. ¶ 61. These allegations lodged in support of causation are sufficiently plausible that they ought "be seen in court" and undergirded then with "[c]oncrete evidence . . . to establish how the injury can be attributed, at least substantially, to the unlawful actions of the [Megastores]." See Pressure Vessels, 137 P.R. Dec. at 497. This Court therefore DENIED the Megastores' motion to dismiss as to count I.

## C. Count II: Unjust Enrichment

The Local Merchants bring count II in the alternative to count I. Compl. ¶¶ 67-77; see Pls.' Opp'n 12-14. The Local Merchants do not dispute that to bring a claim for unjust enrichment, they must have no statutory basis for recovery. Pls.' Opp'n 12. Rather, they argued that they have either stated a claim under Article 1802 (count I) or they have not, in which case no statute precludes their unjust enrichment claims (count II). Id.

Under Puerto Rico law, unjust enrichment claims are available only in the absence of "applicable statutes." See Westernbank P.R. v. Kachkar, Civil No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009) ("Since several statutes are applicable to the case at issue, the doctrine of unjust enrichment is precluded."), R&R adopted, (D.P.R. Mar. 31, 2010); Marrero-Rolon v. Autoridad de Energia Electrica de P.R., Civ. No. 15-1167 (JAG/SCC), 2015 WL 5719801, at *19 (D.P.R. Sept. 29, 2015) ("Numerous courts in this district have held that this applies even at the pleading stage and in spite of the federal courts' general acceptance of alternative pleadings."), R&R adopted, (D.P.R. Mar. 31, 2016); see also El Toro Elec. Corp. v. Zayas, 6 P.R. Offic. Trans. 133, 138 (1977) (holding that unjust enrichment claims cannot be sustained unless the

plaintiff has "no other action to obtain redress" (quotations omitted)).

Because count I is cognizable under Article 1802 for the reasons elucidated above, this Court ruled that Article 1802 is the "applicable statute" which precludes count II. <u>See Westernbank P.R.</u>, 2009 WL 6337949, at *29. Accordingly, this Court ALLOWED the Megastores' motion to dismiss as to count II.

### D. Count III: **Equity**

In count III, the Local Merchants rely solely on Puerto Rico Laws Annotated title 31, section 7 ("Article 7"). Compl. ¶¶ 78-89. The Megastores moved to dismiss count III on the same basis as they advanced in support of the motion to dismiss count II: that these claims cannot be brought when there is an applicable statute. Mot. Dismiss 15 n.8. Neither party has provided any caselaw to support their arguments. This Court ruled that the Local Merchants did not meet their burden of pleading that equity is a cause of action rather than a general principle of jurisprudence.

In relevant part, Article 7 provides:

When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration.

P.R. Laws Ann. tit. 31, § 7.   The plain language of Article 7 suggests that equity is a "general principle[] of jurisprudence," and as such, it does not function as an independent cause of action, but rather as a principle that is "taken into consideration."  See id.  Under Article 7, "[t]he case law construes and applies the law to specific cases, fills the gaps when they exist and, insofar as possible, harmonizes the provisions of law which are or seem to be in conflict."  Caragena v. Colon, 3 P.R. Offic. Trans. 1216, 1223 (P.R. 1975).  In analyzing the principle of equity expressed in Article 7, the Puerto Rico Supreme Court stated:

> This cannot be held to adopt or establish a system of equity here.  A system of equity jurisprudence, such as that administered in the federal courts of the United States, and in some of the state courts, has no place in the system of laws enforced and practiced in the Insular courts of Porto Rico.  It is to be presumed that counsel for appellant only intended to insist that the court should apply to this case the principles of justice universally recognized and approved by the enlightened consciences of all upright and law-abiding men.

Montilla v. Van Syckel, 8 P.R. Dec. 160, 17 (1905).  The Local Merchants did not provide any authority to suggest a different reading of Article 7.  This Court therefore ALLOWED the Megastores' motion to dismiss as to count III.

## V. CONCLUSION

For the foregoing reasons, this Court DENIED the Local Merchants' motion to remand, ECF No. 107, and DENIED in part and ALLOWED in part the Megastores' motion to dismiss, ECF No. 45, denying it as to count I and allowing it as to counts II and III.

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 43 years.